## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-CV-61923-SINGHAL/DAMIAN

WALTER AUTO LOAN TRUST, *et al.*,

     Plaintiffs/Counter-Defendants,

v.

TRACK MOTORS, LLC d/b/a TRACK
MOTORS, *et al.*,

     Defendants/Counter-Plaintiffs.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO DISMISS THE DEFENDANTS' AMENDED COUNTERCLAIMS [ECF NO. 22]

THIS CAUSE is before the Court on Plaintiffs/Counter-Defendants, Walter Auto Loan Trust, AgoraTrade, LLC, AgoraTrade LLC as Trust Manager and Beneficiary of the Walter Auto Loan Trust, and Agora Data Inc. ("Plaintiffs"), Motion to Dismiss the Defendants/Counter-Plaintiffs' ("Defendants") Amended Counterclaims, filed December 23, 2023.[1] [ECF No. 22].

The undersigned has considered the Motion [ECF No. 22], the Response and Reply thereto [ECF Nos. 29, 32], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons that follow, the undersigned recommends Plaintiffs' Motion be granted in part.

---

[1] This matter was referred to the undersigned for a Report and Recommendation by the Honorable Raag Singhal, United States District Judge. [ECF No. 37]. *See* 28 U.S.C. § 636(b)(1)(B).

## I.     BACKGROUND

Plaintiff Agora Data Inc. ("Agora") is a financial technology company that provides independent automobile dealerships and finance companies with loan performance analytics and access to capital. [ECF No. 1 ("Complaint") at ¶ 10]. Agora is the sole member and manager of Plaintiff AgoraTrade, LLC, which is the Trust Manager and beneficiary of Plaintiff Walter Auto Loan Trust. *Id.* at ¶ 1.

Defendants, Track Motors and MBF Finance LLC, operate an automobile dealership located in Fort Lauderdale, Florida, and provide the dealership's customers with financing for the purchase of their vehicles. *Id.* at ¶ 11. One way Defendants' customers finance their purchases is through the option to "Buy Here Pay Here" ("BHPH"), which refers to a method of financing where the dealership provides the financing for its customers' purchase of vehicles and, in exchange, the customers make their regular monthly payments directly to the dealership. *Id.* at ¶ 12. When Defendants' customers purchase vehicles through BHPH financing, they execute what is known as an auto retail installment contract ("RIC"). *Id.* at ¶ 11.

On May 23, 2022, Defendants entered into a Master Receivables Agreement ("MRA") with Plaintiff Walter Auto Loan Trust. Am. Countercl. at ¶ 6. Under the MRA, Defendants could sell portfolios of their right, title, and interest to the receivables, scheduled payments, and related securities from their BHPH-financed RICs to Plaintiffs for a negotiated price. *See* Compl. at 1; *see also* ECF No. 1-1 ("MRA").

Defendants allege that Plaintiffs breached the MRA by misappropriating several portfolios of receivables that Defendants never agreed to transfer to Plaintiffs and by withholding monies from other loan portfolios properly belonging to Defendants. Am.

Countercl. at ¶¶ 7, 10. Defendants further allege that Plaintiffs use a proprietary algorithm to determine a dealer's borrowing base under the MRA and that this algorithm contains errors that cause Plaintiffs to wrongfully withhold monies from dealerships. *Id.* at ¶¶ 22-23. Defendants indicate, by way of example, that Plaintiffs have wrongfully withheld $103,000 from one of Defendants' portfolios, TAM 5, due to errors in the algorithm. *Id.* at ¶ 22. According to Defendants, no provision in the MRA specifies what withheld monies can be used for by Plaintiffs and, thus, these monies are unaccounted for and simply go into a "black hole" that does not factor in dealerships' buybacks. *Id.* at ¶¶ 20, 23, 26. Defendants allege that Agora's CEO admitted there are errors in the program but that Plaintiffs have nevertheless refused to take action to remedy the errors. *Id.* at ¶ 24. Moreover, Defendants claim that at least fifty of the sixty-two dealerships subject to Plaintiffs' algorithm have had monies improperly withheld due to errors in the algorithm, which has resulted in numerous lawsuits with dealers across the country. *Id.* at ¶ 25.

## II.    PROCEDURAL HISTORY

On October 14, 2022, Plaintiffs initiated this action by filing a Complaint against Defendants. [ECF No. 1]. The Complaint asserts claims for breach of the MRA (Count I), specific performance (Count II), tortious interference with business relations (Count III), violation of the Florida Deceptive and Unfair Trade Act ("FDUTPA") (Count IV), and a request for preliminary injunction (Count V). *Id.* On November 8, 2022, Defendants filed their Answer, Affirmative Defenses, and Counterclaim, which alleged Plaintiffs breached the MRA. [ECF No. 9]. After Plaintiffs moved to dismiss Defendants' Counterclaim [ECF No. 12], Defendants filed an Amended Counterclaim on December 13, 2022, alleging breach of contract (Count I), conversion (Count II), tortious interference with business relations (Count

III), and violation of FDUTPA (Count IV). [ECF No. 15]. In light of the Amended Counterclaim, the Court denied Plaintiffs' Motion to Dismiss the original counterclaim as moot [ECF No. 16], and, on December 23, 2023, Plaintiffs filed the Motion to Dismiss the Amended Counterclaim. [ECF No. 22]. In the Motion to Dismiss now before the Court, Plaintiffs seek dismissal of Counts II and IV of Defendants' Amended Counterclaim, alleging conversion and violation of FDUTPA, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. On January 12, 2023, Defendants filed a Response to the Motion to Dismiss, and on January 6, 2023, Plaintiffs filed their Reply. [ECF Nos. 29, 32].

The Motion is fully briefed and ripe for adjudication.

## III.   APPLICABLE LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not

require detailed factual allegations, but "requires more than labels and conclusions . . . [and] a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Further, on a motion to dismiss for failure to state a claim, the "court is generally limited to reviewing what is within the four corners of the complaint." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). The court is therefore "ordinarily barred from considering facts not alleged in the complaint or documents attached to a motion to dismiss." *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020); *see Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint.").

In considering Plaintiffs' Motion to Dismiss, the Court views the Amended Counterclaim in the light most favorable to Defendants and accepts all its well-pleaded allegations as true. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). At this stage, the question for the Court is not whether Defendants will ultimately prevail on the claims alleged in their Counterclaim but whether they are entitled to offer evidence to support those claims. *Twombly*, 550 U.S. at 563 n.8.

## IV.   DISCUSSION

### A.   Defendants' Conversion Claim (Count II)

Under Florida law, the tort of conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. *See National Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985). "Florida courts define conversion as 'an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it.'" *Advanced Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985) (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970)). Thus, "[u]nder Florida law, the elements of conversion are (1) an act of dominion wrongfully

asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Ent.*, LLC, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).

In the Amended Counterclaim, Defendants allege that Plaintiffs "wrongfully asserted an act of dominion or control over monies belonging to Track Motors inconsistent with Track Motors' ownership therein" by "misappropriating several Portfolios that Track Motors never agreed to transfer to Agora and by withholding monies from other Portfolios properly belonging to Track Motors[.]" Am. Countercl. at ¶ 10.

Plaintiffs first argue that Defendants' conversion claim fails as matter of law because the only way Plaintiffs could have come into possession of the subject portfolios would be if Defendants provided them, and a claim for conversion fails when the person consents to the other person's possession. Mot. at 4. The undersigned finds this argument unpersuasive. Review of the Amended Counterclaim reflects Defendants allege Plaintiffs "misappropriate[d]" the portfolios, which, at this stage, the Court accepts as true. Plaintiffs' argument based on consent requires the Court to look "beyond the four corners" of Defendants' Amended Counterclaim, which the Court generally cannot do at the motion to dismiss stage. *See Bickley*, 461 F.3d at 1329 n.7; *Day*, 400 F.3d at 1275–76. Defendants allege that Plaintiffs misappropriated several portfolios. The inquiry into how Plaintiffs came into possession of the information regarding these portfolios is beyond the scope of a motion to dismiss.

Plaintiffs also argue that Defendants' conversion claim fails because a claim for conversion cannot be founded upon an obligation to pay money unless the money is specifically identifiable. Mot. at 5 (citing *Intabill, Inc. v. Elie*, No. 8:09-cv-834-T-23TGW, 2009 WL 3232520, at *2 (M.D. Fla. Sept. 29, 2009). According to Plaintiffs, "Defendants fail to

allege the specific and identifiable money over which Agora is asserting dominion and control, and how Defendants have an immediate right to possess the subject monies." *Id.* at 6. Defendants respond that they have adequately identified specific monies from specific loan portfolios in the Amended Counterclaim, citing paragraph 7 of the Amended Counterclaim. [ECF No. 29 ("Response") at 2-3]. Money can be the subject of a conversion claim "so long as it consists of specific money capable of identification." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970). "To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Id.*

In the Amended Counterclaim, Defendants allege that Plaintiffs "have wrongfully asserted an act of dominion or control *over monies* belonging to Track Motors." Am. Countercl. at ¶ 10 (emphasis added). Thus, it is clear that Defendants' claim is based on Plaintiffs' conversion of money belonging to Defendants. Defendants concede this point in their Response. Resp. at 2. Defendants argue, however, that they have identified specific loan portfolios from which Plaintiffs converted monies, and therefore, the motion to dismiss their conversion claim should be denied. Resp. at 2-3.

Initially, the undersigned notes that Defendants refer to the allegations in paragraph 7 of the Amended Counterclaim as identifying specific loan portfolios and argue that these allegations are adequately specific. *Id.* Defendants also contend that they incorporated paragraph 7 into their conversion claim. *Id.* However, in Count II of the Amended Counterclaim, alleging conversion, Defendants only specifically incorporate paragraphs 1-5 of the Amended Counterclaim and not paragraph 7. In any event, even if the Court considers paragraph 7 as incorporated into Count II, the allegations are still inadequate. Defendants fail

to offer authority in which courts have found a plausible claim for conversion based on similar allegations. On the other hand, as Plaintiffs point out, courts considering claims of conversion based on unspecified monies generally hold that such monies are not a proper subject for a conversion claim, even when there are allegations as to the specific monetary amount converted and the potential to locate the funds. *See Intabill*, No. 8:09-cv-834-T-23TGW, 2009 WL 3232520, at *2 (finding that plaintiff failed to state a claim for conversion where complaint alleged that defendant wrongly withdrew $4 million from a specific account); *see also Fin. Bus. Equip. Sols., Inc. v. Quality Data Sys., Inc.*, No. 08-60769-CIV, 2008 WL 4753710, at *4 (S.D. Fla. Oct. 27, 2008) (Cohn, J.) (finding that plaintiff failed to state a claim for conversion where complaint identifies specific $200 charges that were "traceable through invoices and bank records").

Here, in the allegations of Defendants' conversion claim, Defendants do not specify the amount of funds at issue nor where they can be located or if they are segregated anywhere in particular. Defendants' allegations are even less specific than those in the cases cited above, in which courts dismissed the conversion claims because the money at issue could not be identified. Defendants have failed to identify the amount of money or the specific funds allegedly converted, indicate whether the money is kept separate or otherwise identifiable, or whether there was "an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Belford Trucking*, 243 So. 2d at 648.

Therefore, the undersigned finds that Defendants fail to state a claim for conversion of money and that Plaintiffs' Motion to Dismiss should be granted as to Count II of the Amended Counterclaim.

**B.** *Defendants' FDUTPA Claim (Count IV)*

Plaintiffs also argue that Count IV of the Amended Counterclaim, Defendants' FDUTPA claim, fails. The elements of a claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive act or practice is one 'that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Kenneth F. Hackett & Assoc., Inc. v. GE Capital Information Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (Altonaga, J.) (quoting *Millennium Commc'ns & Fulfill., Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)). An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." S*tate Farm Mut. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (Moore, J.).

Here, Defendants allege that Plaintiffs engaged in the following unfair and deceptive acts: (a) taking loan portfolios from Defendants without their permission and written consent as required under the MRA; (b) not crediting Defendants for monies repaid to Plaintiffs; (c) withholding monies from other loan portfolios belonging to Defendants; and (d) not properly applying buybacks to Defendants' borrowing base. Am. Countercl. at ¶ 20. Defendants further allege that flaws in Plaintiffs' proprietary algorithm used to determine a dealer's borrowing base have caused Plaintiffs to improperly withhold monies from Defendants. *Id.* at ¶¶ 21-24. As an example, Defendants allege that the algorithm caused Plaintiffs to wrongly withhold $103,000 from Defendants related to loan portfolio TAM 5. *Id.* at ¶ 22. Defendants further allege that under the MRA, these monies are unaccounted for and do not factor into

Defendants' buybacks and, therefore, "simply go into a 'blackhole[.]'" *Id*. at ¶ 26. Defendants also allege that as a result of the foregoing, Plaintiffs have caused substantial harm to Defendants and actual damages. *Id*. at ¶¶ 27-28.

Plaintiffs argue Defendants' FDUTPA claim fails as a matter of law because it merely realleges Defendants' claim for breach of contract and does not include significant allegations of unfair or deceptive conduct. Mot. at 7-8. In support, Plaintiffs cite cases in which courts held that a FDUTPA claim cannot stand solely based on an intentional breach of contract. *See Matrix Grp. Ltd., Inc. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 596 (8th Cir. 2007) (affirming dismissal of FDUTPA claim where plaintiff alleged defendant violated FDUTPA by intentionally breaching the contract between the parties); *see also Hache v. Damon Corp.*, No. 8:07-cv-1248, 2008 WL 912434 at *2 (M.D. Fla. April 1, 2008) (dismissing FDUTPA claim where claim alleged "nothing more than breach of the subject warranties.").

In their Response, Defendants concede that the allegations at paragraphs 20a – c of Count IV, alleging Plaintiffs took loan portfolios from Defendants without their permission, have not credited Defendants for monies repaid to Plaintiffs, and withheld monies from other loan portfolios belonging to Defendants, are duplicative of Defendants' other claims and can therefore be stricken. Resp. at 4. The undersigned agrees and recommends that the Court strike paragraphs 20a, 20b, and 20c from the Amended Counterclaim. Defendants argue that even without those allegations, the Amended Counterclaim sufficiently alleges *prima facie* FDUTPA violations. *Id*. The undersigned agrees.

Unlike the cases relied on by Plaintiffs, Defendants allege more than an intentional breach of the MRA. Specifically, Defendants allege that Plaintiffs are using a program that contains errors in its calculation of a dealer's borrowing base (Am. Countercl. at ¶ 21), that

these errors cause Plaintiffs to wrongfully withhold monies for buybacks from Defendants and not properly apply these buybacks to Defendants' borrowing base (*id*. at ¶¶ 20d, 21, 22, 23), that these withheld monies go unaccounted for into a "black hole" (*id*. at ¶ 26), that Plaintiffs know the algorithm contains errors (*id*. at ¶ 24), and that, despite that knowledge, Plaintiffs continued using the erroneous algorithm to withhold monies from dealers and to wrongly put the majority of its dealers, including Defendants, into default (*id*. at ¶ 25). Defendants further allege that as a result of the foregoing, Plaintiffs have caused substantial harm to Defendants and Defendants have sustained actual damages, such as the $103,000 improperly withheld from loan portfolio TAM 5. *Id*. at ¶¶ 22, 27-28. These allegations, which must be taken as true for purposes of considering the Motion to Dismiss, constitute adequately significant allegations of unfair or deceptive conduct, causation, and actual damages.

Thus, the undersigned finds that Count IV of the Amended Counterclaim adequately alleges a plausible claim for violation of FDUTPA.

## V.    CONCLUSION

For the reasons set forth above, the undersigned finds that Count II of the Amended Complaint fails to state a claim for conversion of money but that Count IV sufficiently alleges a claim for violation of the FDUTPA. The undersigned further finds that paragraphs 20a – 20c of the Amended Counterclaim should be stricken in accord with Defendants' concession in their Response.

## VI.    RECOMMENDATION

Accordingly, the undersigned respectfully recommends that Plaintiffs' Motion to Dismiss the Amended Counterclaims [ECF No. 22] be **GRANTED IN PART AND**

**DENIED IN PART,** that Count II of the Amended Counterclaim be **DISMISSED**, and that paragraphs 20a, 20b, and 20c be **STRICKEN** from the Amended Counterclaim.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 3rd day of August, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:     Hon. Raag Singhal, *United States District Judge*
        Counsel of Record

12